**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DEBBIE REID O'GORMAN,<br><span style="padding-left:2em">Debtor.</span> | BAP No. NC-22-1062-BFT<br><br>Bk. No. 21-10374 |
| THE LOVERING TUBBS TRUST; CLC COMPLIANCE, INC., TRUSTEE; PACIFIC EQUITIES, LLC,<br><span style="padding-left:2em">Appellants,</span><br>v.<br>TIMOTHY W. HOFFMAN, Chapter 7 Trustee,<br><span style="padding-left:2em">Appellee.</span> | Adv. No. 21-01009<br><br><br>**MEMORANDUM**∗ |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Roger L. Efremsky, Bankruptcy Judge, Presiding

Before: BRAND, FARIS, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Appellants, The Lovering Tubbs Trust ("LT Trust"), CLC Compliance,

Inc., ("CLC"), and Pacific Equities, LLC ("Pacific") (collectively, "Appellants"),

appeal an order granting summary judgment to the chapter 7[1] trustee,

---

∗ This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy

Timothy W. Hoffman ("Trustee"), on his claim against Appellants under § 548(a)(1)(A) as transferees of an actual fraudulent transfer, and the judgment avoiding the transfer and recovering the property. Trustee alleged, and the bankruptcy court determined, that debtor Debbie Reid O'Gorman transferred real property to Appellants with the actual intent to hinder, delay, or defraud a creditor. Appellants also argue that the bankruptcy court should have granted their request for time to continue discovery. Seeing no reversible error by the bankruptcy court, we AFFIRM.

## FACTS

### A.    Prepetition events

O'Gorman was the owner of a home on about 30 acres in Calistoga, California ("Property"). In 2010, she gave Grant Reynolds a second deed of trust against the Property as security for a loan.

In 2019, O'Gorman was in default on her mortgage with the senior lienholder on the Property. Protecting his junior interest, Reynolds cured O'Gorman's default with the senior lienholder. In early 2020, Reynolds initiated a nonjudicial foreclosure on his deed of trust.

In July 2020, attorney William Utnehmer contacted O'Gorman and offered to assist her with the foreclosure. O'Gorman agreed and entered into an attorney-client relationship with Utnehmer and his firm, Sonoma Law Center. According to their Retainer Agreement, Utnehmer promised to provide O'Gorman legal services "for the research, strategic advisory and

Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

representation related to foreclosure proceedings, bankruptcy, bridge financing, repositioning, marketing and/or sale of [the Property]."

As the nonjudicial foreclosure progressed, Utnehmer told O'Gorman that she could save the Property by transferring it into an "irrevocable land trust," making herself a 20% beneficiary and another entity as an 80% beneficiary. To accomplish the transfer, Utnehmer created Pacific, the LT Trust, and CLC. Utnehmer holds an interest in both Pacific and CLC. Pacific was a real estate investment group created to arrange for funding and development of the Property, the LT Trust was the land trust, and CLC served as trustee of the LT Trust. The LT Trust beneficiaries were the O'Gorman Family Trust (20% beneficial interest) and Pacific (80% beneficial interest). O'Gorman signed a grant deed transferring the Property to the LT Trust. She did not receive any money in exchange for the transfer, and no transfer tax was paid. No notice of the transfer was provided to the senior lienholder or to Reynolds. O'Gorman occupied the Property after the transfer and was still living there on the petition date.

In a document dated June 30, 2021, and signed by Utnehmer and O'Gorman ("June Letter"), Utnehmer described how he had "successfully structured a work-out" for the Property by transferring it to the LT Trust and how Pacific had arranged for its clean-up, renovation, and remediation of building code violations. However, explained Utnehmer, these improvement efforts were frustrated by the COVID-19 pandemic, tenants refusing to vacate, and his business partner's unstable mental condition and failure to fund his

3

share of the project. Thus, Utnehmer recommended that the Property be immediately marketed while his law firm maintained a legal defense to postpone the foreclosure to accommodate a sale.

O'Gorman terminated her relationship with Utnehmer in August 2021.

**B.      Postpetition events**

After a failed pro se chapter 13 case, O'Gorman, with the assistance of counsel, filed a chapter 7 case on August 19, 2021.

Trustee filed an adversary complaint against Appellants, seeking to avoid and recover what he alleged was O'Gorman's fraudulent transfer of the Property to Appellants under § 548(a)(1)(A). Appellants, represented by Utnehmer's law firm, filed an answer denying Trustee's allegations.

Five weeks after Appellants filed their answer and before the parties had engaged in discovery, Trustee moved for summary judgment ("MSJ"). He argued that the transfer of the Property to the LT Trust was an intentionally fraudulent transfer designed to hinder and delay (if not defraud) Reynolds in his efforts to foreclose on his deed of trust. To establish O'Gorman's requisite intent, Trustee argued that at least six of the eleven enumerated "badges of fraud" under Cal. Civ. Code § 3439.04(b)(1)-(11)[2] were met: (a) the transfer

---

[2] Trustee relied on the common law badges of fraud codified in Cal. Civ. Code § 3439.04(b)(1)-(11) to establish O'Gorman's intent under § 548(a)(1)(A). The eleven enumerated badges of fraud in California are whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the

was to an insider – the LT Trust – in which O'Gorman held a 20% beneficial interest; (b) O'Gorman remained in control of the Property after the transfer to the LT Trust; (c) at the time of the transfer, Reynolds had been pursuing a foreclosure on his deed of trust and the transfer was admittedly designed to thwart that effort; (d) the transfer was a transfer of substantially all of O'Gorman's assets; (e) by transferring the Property to the LT Trust, O'Gorman removed the Property from the reach of her creditors; and (f) the LT Trust paid no consideration in exchange for the transfer of the Property to it.

In support of the MSJ, Trustee provided a declaration from O'Gorman. She admitted that she understood the transfer would prevent or delay Reynolds from foreclosing on his deed of trust and that this was her only reason for following Utnehmer's advice. O'Gorman said that Utnehmer told her that he would devise a plan to improve the Property so that it could be sold at a higher price. O'Gorman said she relied on his legal advice at the time because she was desperate to save her home. O'Gorman now believed that the scheme of creating the LT Trust, Pacific, and CLC and transferring the

---

debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor. Cal. Civ. Code § 3439.04(b)(1)-(11).

Although § 548(a)(1)(A) is a matter of federal law, it was not error for the bankruptcy court to consider the California badges of fraud for determining whether Trustee had established O'Gorman's actual intent. *See Brown v. Third Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1354 (8th Cir. 1995) (discussing application of Missouri's codified badges of fraud to § 548(a)(1)).

Property to the LT Trust was an attempt by Utnehmer to defraud her.

O'Gorman said the Property was worth at least $2.5 million when she transferred it to the LT Trust and that it comprised substantially all of her assets. Contrary to what Utnehmer said in the June Letter, implying that some form of consideration was exchanged, O'Gorman said she did not receive any funds for clean-up, development, or sale of the Property. She was also not aware of any third party who received funds for those reasons. O'Gorman said that she should have read the June Letter more carefully before she signed it and regretted signing it at all.

Appellants filed a late opposition to the MSJ, arguing that it should be denied because it was premature and Trustee had not demonstrated the absence of a genuine issue of material fact. Appellants argued that the parties had not yet engaged in any discovery, including conducting a Civil Rule 26(f) conference. Appellants requested time to continue discovery under Civil Rule 56(d)[3] so they could obtain and present facts essential to their opposition. Appellants further argued that Trustee had not provided sufficient evidence that the transfer was done with actual intent to hinder, delay, or defraud Reynolds, who they argued Trustee had not shown was a legitimate creditor. Thus, genuine issues of material fact were in dispute and precluded summary

---

[3] Civil Rule 56(d) provides: **When Facts Are Unavailable to the Nonmovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or
    (3) issue any other appropriate order.

judgment.

In reply to Appellants' discovery arguments, Trustee argued that Appellants had failed to demonstrate that they were entitled to a continuance under Civil Rule 56(d). As architect of the transfer, argued Trustee, Utnehmer was in possession of more facts than O'Gorman and did not need discovery to formulate an opposition to the MSJ. Further, he argued, Appellants had failed to submit an affidavit or declaration in support of a continuance. In fact, Appellants failed to even articulate in their opposing brief what facts they needed or hoped to elicit if they had more time for discovery.

In addition, Trustee argued that Appellants had failed to establish the existence of a triable issue of material fact. Appellants did not support their opposition with a declaration (or any other evidence) contradicting any of the specifically averred facts in the MSJ. Simply put, Appellants' opposition was not supported by any admissible evidence as required by Civil Rule 56(c)(1) and failed to show that Trustee was not entitled to judgment as a matter of law.

After a hearing, the bankruptcy court granted the MSJ and denied Appellants' request for time to conduct discovery. The court concluded that Appellants had failed to establish the existence of a triable issue of material fact with any admissible controverting evidence, or to comply with Civil Rule 56(d)'s requirement of an affidavit or declaration for a continuance. This timely appeal followed.

////

7

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.      Did the bankruptcy court err when it granted summary judgment in favor of Trustee?

2.      Did the bankruptcy court abuse its discretion when it denied Appellants' request for time to allow discovery prior to ruling on the MSJ?

## STANDARDS OF REVIEW

We review the appeal of a summary judgment ruling de novo. *Stadtmueller v. Sarkisian (In re Medina),* 619 B.R. 236, 240 (9th Cir. BAP 2020), *aff'd,* No. 20-60045, 2021 WL 3214757 (9th Cir. July 29, 2021). Under de novo review, we view the evidence in the light most favorable to the nonmoving party to determine whether the moving party was entitled to judgment as a matter of law because no genuinely disputed issues of material fact needed to be tried. *Wolkowitz v. Beverly (In re Beverly),* 374 B.R. 221, 230 (9th Cir. BAP 2007), *aff'd in part, dismissed in part,* 551 F.3d 1092 (9th Cir. 2008). "When the material facts are not in dispute, our only function is to determine whether the bankruptcy court correctly applied the law." *Patow v. Marshack (In re Patow),* 632 B.R. 195, 202 (9th Cir. BAP 2021) (citation omitted), *aff'd,* No. 21-60051, 2022 WL 2256325 (9th Cir. June 23, 2022).

We review the denial of a Civil Rule 56(d) motion seeking more time to conduct discovery for an abuse of discretion. *Kurtin v. Ehrenberg (In re Elieff),*

637 B.R. 612, 621 (9th Cir. BAP 2022) (citing *Atay v. Cnty. of Maui,* 842 F.3d 688, 698 (9th Cir. 2016)). The bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in the record. *United States v. Hinkson,* 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.      Summary judgment standard

Civil Rule 56(a), applicable here by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute over material facts is genuine where a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Once the movant has come forward with uncontroverted facts entitling it to relief, the burden shifts to the nonmovant to establish that there is a specific and genuine issue of material fact to warrant a trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 332 n.3 (1986). The nonmovant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that the dispute exists." *Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 707 (9th Cir. 2008) (citation omitted). Conjecture, surmise or "metaphysical doubt" by the nonmovant of the movant's assertions will not defeat a summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586

9

(1986). The nonmovant's evidence must be probative. *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999) (even in cases where intent is at issue, summary judgment may be appropriate if the nonmovant "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (citation omitted).

In deciding whether material factual issues exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. However, the court is required to do so only in circumstances where a fact specifically averred by the moving party is contradicted by specific evidence submitted in opposition to the motion. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). If a motion for summary judgment is properly supported and the nonmovant does not set forth specific facts showing a genuine issue for trial, summary judgment must be entered. Civil Rule 56(a); Rule 7056.

**B.      The bankruptcy court did not err in granting the MSJ.**

Section 548 allows a trustee to avoid any transfer of an interest of the debtor in property if the debtor made such transfer with actual intent to hinder, delay or defraud any creditor. § 548(a)(1)(A). To prevail in an action under § 548(a)(1)(A), the trustee must prove that (1) the property transferred was property of the debtor, (2) there was a transfer, (3) the transfer occurred within two years prior to bankruptcy, and (4) the transfer was made with the actual intent to hinder, delay, or defraud the debtor's creditors. *Argyle Online, LLC v. Nielson (In re GGW Brands, LLC)*, 504 B.R. 577, 607 (Bankr. C.D. Cal.

10

2013). Because the statute is stated in the disjunctive, an actual fraudulent transfer occurs when the debtor makes a transfer with the actual intent either to hinder **or** to delay **or** to defraud creditors. *Leslie v. Mihranian (In re Mihranian),* BAP No. CC-16-1381-KuFTa, 2017 WL 2775044, at *7 (9th Cir. BAP June 26, 2017) (citing § 548(a)(1)(A); Cal. Civ. Code § 3439.04; *In re Beverly*, 374 B.R. at 232). Actual intent can be found on the basis of circumstantial evidence since direct proof will rarely be available. *Hayes v. Palm Seedlings Partners (In re Agric. Rsch. & Tech. Grp., Inc.),* 916 F.2d 528, 534 (9th Cir. 1990).

In support of the MSJ, Trustee set forth uncontroverted evidence that (1) the Property belonged to O'Gorman, (2) she transferred it to the LT Trust, (3) the transfer occurred within two years of the petition date, and (4) she transferred the Property with the actual intent to prevent or delay Reynolds from foreclosing on his deed of trust. Appellants opposed the MSJ. Other than denying that the transfer was fraudulent and making conclusory statements that there were material fact disputes precluding summary judgment, Appellants did not present an affidavit or any other admissible evidence specifically averring any of the facts about the transfer or O'Gorman's intent.

The bankruptcy court found that the MSJ established the necessary elements for an actual fraudulent transfer under § 548(a)(1)(A) and that Appellants had failed to create any triable issue of material fact. Appellants argue that the bankruptcy court erred by granting Trustee summary judgment on the sole basis that they did not file a responsive affidavit. In other words, Appellants contend it was summary judgment by default. But

the bankruptcy court did not grant summary judgment solely on that basis. Rather, it reviewed Trustee's evidence and determined that he had demonstrated the absence of a genuine dispute as to O'Gorman's actual intent so that the burden shifted to Appellants, and Appellants had failed to present any admissible evidence to create a genuine dispute on that issue. We agree with that determination. Trustee presented admissible evidence to support every element of his § 548(a)(1)(A) claim; Appellants presented nothing to create a genuine issue of material fact as to any of those elements.

Appellants argue that they were not required to provide a responsive affidavit because their opposition established that O'Gorman's "conclusory and inconsistent" declaration was insufficient to establish fraudulent intent. To the extent Appellants now attempt to manufacture a material question of fact by asserting inconsistencies as to O'Gorman's intent or whether consideration was given for the transfer, that effort fails. Apart from identifying two paragraphs in Trustee's brief with which Appellants took issue, the opposition said nothing about any purported conclusory or inconsistent statements made by O'Gorman. The thrust of their argument was that the MSJ was premature. In any case, the disputed paragraphs in Trustee's brief were not evidence; the evidence was presented by O'Gorman's declaration. Appellants' late attempt to point out alleged inconsistencies as to O'Gorman's intent with other facts known to them at the time begs the question why did they not present these alleged facts in a declaration from Utnehmer.

12

Appellants next argue that the "badges of fraud" did not overcome the direct evidence in the June Letter that O'Gorman lacked fraudulent intent because she transferred the Property for a legitimate business purpose. The implication from this argument is that an actual intent to defraud is required. This is not correct. It is sufficient that O'Gorman intended to hinder or delay Reynolds in his efforts to foreclose. While the June Letter established that the plan was to sell the Property for more than would be received in a foreclosure, it also provided for the transfer of the Property for no consideration and without notice to creditors, which are two of the badges of fraud relied upon by Trustee and the court.

Next, Appellants argue that Trustee offered insufficient evidence that Reynolds was or could have been harmed by the transfer. In other words, Appellants contend that harm is a necessary element for a § 548(a)(1)(A) claim. Appellants never raised this argument before the bankruptcy court. In any case, they are wrong. "Actual damages" or "actual harm" is not an element of an actual fraudulent transfer claim. *See In re Medina,* 619 B.R. at 240, 244 n.11 (holding that "actual damages" or "actual harm" is not an element of an actual fraudulent transfer claim under Cal. Civ. Code § 3439.04(a)(1) and noting that courts construing nearly identical § 548(a)(1)(A) have reached the same conclusion, citing *In re Sherman,* 67 F.3d at 1355 n.6 ("The [transferees] also argue that the transfers cannot be avoided as fraudulent because no creditor was harmed. However, the bankruptcy court correctly noted that under § 548(a)(1), actual harm is not required; the trustee must show only that

13

the debtor acted with the intent to hinder, delay or defraud creditors.")).

While summary judgment is rarely granted on a § 548(a)(1)(A) claim because the element of intent often requires a factual determination, Appellants failed to show the existence of a genuine dispute as to O'Gorman's actual intent; thus, summary judgment was appropriate in this case.

**C.    The bankruptcy court did not abuse its discretion in denying Appellants' unsupported request for time to continue discovery.**

To justify a continuance of summary judgment under Civil Rule 56(d), applicable here by Rule 7056, the movant must: (1) set forth in affidavit form the specific facts it hopes to elicit through further discovery; (2) show that the facts sought exist; and (3) show that the sought-after facts are essential to oppose summary judgment. *Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 827 (9th Cir. 2008). The movant "**must identify by affidavit** the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and Cnty. of S.F.,* 441 F.3d 1090, 1100 (9th Cir. 2006) (emphasis added); *Cont'l Mar. of S.F., Inc. v. Pac. Coast Metal Trades Dist. Council, Metal Trades Dep't, AFL-CIO,* 817 F.2d 1391, 1395 (9th Cir. 1987) (party seeking continuance has the burden to show what specific facts it hopes to discover that will raise an issue of material fact).

The bankruptcy court denied Appellants' request for time to continue discovery under Civil Rule 56(d), noting the absence of an affidavit or declaration from Utnehmer stating what material facts Appellants hoped to discover and how those facts would preclude summary judgment. The

bankruptcy court rejected their argument that it was too early to grant summary judgment because no discovery had been done. Appellants argue that, despite their admitted failure to file an affidavit in support of their request under Civil Rule 56(d), the bankruptcy court erred as a matter of law by granting summary judgment so early in the case and prior to conducting discovery. We disagree.

Civil Rule 56(b) permits a party to move for summary judgment at **any time** until 30 days after the close of all discovery, unless a local rule or court order sets a different time, which was not the case here. The rule does not distinguish between a party that has nearly finished discovery and one that has not yet begun, and nothing in the rule suggests that summary judgment cannot be granted unless discovery has commenced.

Nonetheless, controlling case law provides that when a summary judgment motion is filed early in the case, before a party has had any realistic opportunity to pursue discovery, the court should grant a Civil Rule 56(d) motion "fairly freely." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003) (summary judgment motion filed less than one month after suit was filed); *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1986) ("Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment.").

Despite this general rule, however, a request for a continuance must still

comply with Civil Rule 56(d), which requires the filing of an affidavit. *See Bryant v. Ford Motor Co.,* 886 F.2d 1526, 1534 (9th Cir. 1989) (lack of a formal request for a continuance is relevant to the question whether the court abused its discretion by ruling on the motion when it did); *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986) ("Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment.") (applying former Civil Rule 56(f), now 56(d)). Appellants argue that their brief opposing summary judgment sufficiently identified disputed material facts and therefore served as the functional equivalent of an affidavit. We reject this. "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f). Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery." *Brae Transp., Inc.,* 790 F.2d at 1443 (applying former Civil Rule 56(f)).

Even if we accepted Appellants' opposing brief as a substitute for an affidavit, which diminishes the value of an affidavit by permitting an attorney's unsworn argument to replace it, Appellants failed to identify the specific facts they hoped to elicit through further discovery, that these facts existed, and that these sought-after facts were essential to oppose summary judgment. Appellants' conclusory statements that discovery would yield essential, but unspecified, facts fell far short of complying with the rule. Making this case more egregious is that Utnehmer, the architect of the transfer, was in possession of enough facts to formulate an affidavit to oppose

16

the MSJ without any discovery and he failed to do so.

Accordingly, the bankruptcy court did not abuse its discretion in denying Appellants' request for a continuance under Civil Rule 56(d).

## CONCLUSION

For the reasons stated above, we AFFIRM.